UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IZELL McINESS, et al,

        Plaintiffs,                            Case No. 16-cv-13918

vs.                                         HON. MARK A. GOLDSMITH

CITY OF DETROIT, et al.,

        Defendants.
_____/

## OPINION & ORDER
## (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 54) AND (2) DENYING AS MOOT REMAINING PENDING MOTIONS (Dkts. 55, 60, 61, 62)

This matter is before the Court on Defendants' motion for summary judgment (Dkt. 54). The issues have been fully briefed, and the Court held a hearing on April 19, 2018. For the reasons that follow, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' federal claims and, therefore, dismisses those claims with prejudice. Because the dismissal of these federal claims means that this case no longer retains a federal character, the Court remands Plaintiffs' state-law claims to the Wayne County Circuit Court and denies those portions of Defendants' motion challenging the state-law claims without prejudice.

## I. BACKGROUND

Defendants are the City of Detroit and several officers with the Detroit Police Department. On March 22, 2016, the officers executed a search warrant at the Galaxy Herbal Medical Marijuana Caregiver Center, a medical marijuana dispensary in Detroit. At the dispensary, the officers encountered Plaintiffs Izell McIness and Larry Duffey.

1

The officers executed the search warrant, rammed open the door to the establishment, ordered the occupants to the ground, and detained McIness and Duffey.  Sampson Police Report, Ex. G to Def. Mot., at 1, PageID.897 (Dkt. 54-9).  McIness claims that he alerted the officers that he could not comply with their order to get on his stomach because he had stitches from a recent surgery.  McIness Answers, Ex. 1 to Pl. Resp. to Mot. for Sum. Judg., ¶ 8 (Dkt. 58-1).  When he did not comply, McIness claims that one of the officers struck him at least twice with the butt of a weapon and handcuffed him, which tore his stitches open.  Id.  Duffey, for his part, claims that he was forced to the floor, handcuffed, and thrown up against a wall.  Duffey Answers, Ex. 2 to Pl. Resp. to Mot. for Sum. Judg., ¶ 8 (Dkt. 58-2).  Plaintiffs claim that they both requested their handcuffs be loosened because they were too tight, and that the officers refused to render medical care.  Counter-statement of Mat. Facts, ¶ 6 (Dkt. 58).

Plaintiffs brought this suit in the Wayne County Circuit Court, and Defendants removed it to this Court.  Plaintiffs have brought claims under 42 U.S.C. § 1983 for: (i) excessive force in violation of the Fourth Amendment; (ii) deliberate indifference to need for medical treatment in violation of the Fourteenth Amendment; (iii) conspiracy to violate constitutional rights; and (iv) supervisory and municipal liability, as well as state-law claims for (i) gross negligence, intentional, willful, and wanton misconduct; (ii) assault and battery; and (iii) intentional infliction of emotional distress.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the

governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." <u>Horton v. Potter</u>, 369 F.3d 906, 909 (6th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).

### III. ANALYSIS

The Court grants Defendants' motion for summary judgment on two independent bases: McIness and Duffey fail to submit any legally admissible evidence in support of their claims, and even if their submissions were considered in proper legal form, they fail to meet the summary judgment standard.

As an initial matter, McIness and Duffey have only submitted their respective answers to interrogatories in opposing summary judgment. <u>See</u> McIness Answers, Ex. 1 to Pl. Resp. to Mot. for Sum. Judg.; Duffey Answers, Ex. 2 to Pl. Resp. to Mot. for Sum. Judg. But neither set of answers is sworn under oath before a notary public; nor were they signed as declarations under the penalty of perjury, as permitted under 28 U.S.C. § 1746. <u>See</u> McIness Answers at 11-12, PageID.1002-1003; Duffey Answers at 11-12, PageID.1014-1015. "To be treated as evidence, testimonial statements [] must be set forth in an affidavit that is properly notarized or in which statements are declared to be true under penalty of perjury as 28 U.S.C. § 1746 allows." <u>Gonzales v. Brevard</u>, 531 F. Supp. 2d 1019, 1022 (W.D. Wis. 2008); <u>accord</u> <u>Nissho-Iwai American Corp. v. Kline</u>, 845 F.2d 1300, 1306 (5th Cir. 1988) (explaining that an affidavit is "incompetent to raise a

fact issue precluding summary judgment" if it is unsworn and does not meet 28 U.S.C. § 1746's requirement that it be made "under penalty of perjury" and verified as "true and correct."). Because Plaintiffs' interrogatory responses are neither properly-sworn affidavits nor unsworn statements compliant with 28 U.S.C. § 1746, they cannot be used to raise issues of fact in the motion for summary judgment.

Accordingly, Plaintiffs have submitted no competent evidence to rebut the motion for summary judgment, and thus there is no evidence in the record that any kind of force was used, let alone excessive force. Because Defendants can show that there is an absence of evidence to support Plaintiffs' case, they are entitled to summary judgment. See Horton, 369 F.3d at 909; see also Scadden v. Werner, 677 F. App'x 996, 1001 (6th Cir. 2017) (affirming grant of summary judgment because "without any evidence, a jury would necessarily lack a basis to return a verdict for [Plaintiff]").

Defendants would be entitled to summary judgment regardless because, even assuming Plaintiffs' interrogatory answers were competent as evidence, they do not demonstrate a jury-submissible case. Plaintiffs have submitted one set of interrogatory answers for each respective Plaintiff. According to the answers, McIness was forced to the ground and struck at least twice with the butt of a weapon after he informed police that he could not get on the ground due to stitches from a recent surgery. McIness Answers ¶ 8. He claimed that this tore open his stitches. Id. McIness also answered that he was handcuffed excessively tightly and thrown against a wall. Id. He claimed that he suffered injuries in the form of his stitches being torn open, which required at least one surgery. Id. ¶ 9. Duffey's answers indicated that during the incident, Duffey was forced to the floor, handcuffed excessively tightly, and thrown up against the wall. Duffey Answers ¶¶ 8, 9. Duffey did not explain what further injuries he sustained as a result of the

incident, except that a pre-existing head injury was aggravated and that he was traumatized by witnessing the treatment of McIness. Id. ¶¶ 4, 6, 8.

Although the injury claims are vague for both McIness and Duffey, there is "no 'de minimis injury requirement for excessive force claims[,]'" Cline v. City of Mansfield, 745 F. Supp. 2d 773, 820 (N.D. Ohio 2010), quoting Morrison v. Bd. of Trs., 583 F.3d 394, 406 (6th Cir. 2009); rather, "[i]n determining whether an officer has used excessive force in violation of the Fourth Amendment, [courts] employ an objective-reasonableness test, asking whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Roell v. Hamilton Cty., Ohio/Hamilton Cty. Brd. of Cty. Comm'rs, 870 F.3d 471, 480 (6th Cir. 2017) (internal quotation marks omitted). Courts "judge the lawfulness of the conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Getz v. Swoap, 833 F.3d 646, 652-653 (6th Cir. 2016) (internal quotation marks omitted). Three factors govern a reasonable force determination: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

With the scant factual statements contained in the interrogatory answers, no reasonable jury could conclude that the officers' actions were unreasonable. As it relates to the Graham factors, it is undisputed that the police entered the dispensary in raid uniforms with a narcotics search warrant. Due to the lack of development of the facts surrounding the case, relatively little is known about the circumstances that led to the raid; however, it is reasonable to assume, given the precautions that the officers took in preparing for the raid and the drug-related nature of the raid, that a reasonable officer would anticipate that everybody present at the dispensary posed a

threat to his or her safety.  See <u>Michigan v. Summers</u>, 452 U.S. 692, 702 (1981) ("Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence.").  In such circumstances, using a level of force necessary to detain those at a premises to be searched is reasonable.  See <u>Muehler v. Mena</u>, 544 U.S. 93, 98-99 (2005) ("Inherent in <u>Summers'</u> authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention.").

Additionally, McIness admits that he did not immediately comply with lawful police orders to lay down on the ground; thus, the use of force required to ensure he comply with those orders was reasonable, especially considering that McIness' answers do not make it clear what level of force accompanied being struck by the weapon.[1]  See <u>Wells v. City of Dearborn Heights</u>, 538 F. App'x 631, 637 (6th Cir. 2013) (finding reasonable use of force in officer's forcing plaintiff to the ground during drug raid, where plaintiff "fail[ed] to drop to the ground quickly enough," despite plaintiff's medical condition).  The same is true for Duffey's allegations, as his answers do not allege any use of force beyond that which would be necessary to effectuate detention.

Plaintiffs' theory and paucity of facts fail to satisfy the Supreme Court's instruction that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

---

[1] McIness claims in his answers that he alerted the officers that he could not comply with their orders.  See McIness Answers ¶ 8.  However, no deposition transcripts have been submitted, so it is impossible for the Court to know whether the officers heard McIness' statements or if they simply thought that McIness was not complying with their orders.  Accordingly, the Court cannot find that it was unreasonable for the officers to use the force that they did.  See <u>Stricker v. Township of Cambridge</u>, 710 F.3d 350, 364-365 (6th Cir. 2013) (finding no excessive force, even though officer pointed a gun at resident of a home, handcuffed him, and forced him to stay on the floor for thirty minutes, because, <u>inter alia,</u> resident admitted that they had disobeyed lawful commands).

evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-397. As a consequence, Plaintiffs have not shown that they have a jury-submissible case on excessive force.[2]

For these reasons, the motion is granted as it relates to the claims pertaining to force allegedly used against Plaintiffs (Counts I, II, IV, V).[3] Further, the interrogatory answers contain no facts related to the claim for deliberate indifference to need for medical treatment (Count III), so that claim must also be dismissed.

---

[2] Further, Plaintiffs have not cited any case that clearly establishes that Defendants violated their constitutional rights, and "[q]ualified immunity is warranted even if a constitutional violation has occurred if the right violated was not clearly established," Rodriguez v. City of Cleveland, 439 F. App'x 433, 447-448 (6th Cir. 2011). This inquiry "depends very much on the facts of each case," meaning that an "officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018) (internal quotation marks omitted). This is clearly not the case here, as there is established case law that an officer may use force to effectuate detention during a drug raid, even where a person's medical condition makes it difficult from him to comply. See Wells, 538 F. App'x at 637 (finding reasonable use of force in officer's forcing plaintiff to the ground during drug raid, despite plaintiff's medical condition). Thus, Defendants would be entitled to qualified immunity regardless.

[3] The dismissal of Counts II, IV, and V necessarily result from the dismissal of Count I's excessive-force claim. Count II alleges failure to intervene, but a failure-to-intervene claim requires a showing that Defendants "observed or had reason to know that excessive force would be or was being used and had both the opportunity and the means to prevent the harm from occurring." Burgess v. Fischer, 735 F.3d 462, 475 (6th Cir. 2013) (internal quotation marks omitted) (emphasis in original). Where no excessive force occurred, there can be no failure to intervene. Count V, which alleges supervisory and municipal liability, must be dismissed for similar reasons. Where there is no constitutional violation, there can be no "constitutional wrong [that] has been caused by [a] failure to train." City of Canton, Ohio v. Harris, 489 U.S. 387 (1989). See also Smith v. Erie Cty. Sheriff's Dep't, 603 F. App'x 414, 418 (6th Cir. 2015) ("[I]f Individual Defendants are not liable for a constitutional violation, the claims against their supervisors and the municipalities that employ them fail."). Count IV alleges conspiracy to violate constitutional rights, but such a claim cannot be sustained where there is no underlying constitutional violation. See Van Buren v. Crawford Cnty., No. 13-14565, 2017 WL 3479546 at *7 (E.D. Mich. Aug. 14, 2017) ("Under both federal and Michigan law, civil conspiracy claims are derivative. They are cognizable only insofar as there is an underlying cognizable legal claim.").

Having determined that Plaintiffs' federal claims lack merit, the case does not retain a federal character. Accordingly, pursuant to 28 U.S.C. § 1367, the Court declines to extend supplemental jurisdiction over Plaintiff's state-law claims, Counts VI through VIII, and remands those claims to the Wayne County Circuit Court. Brown v. Cuyahoga Cnty., 517 F. App'x 431, 436 (6th Cir. 2013) ("28 U.S.C. § 1367 allows a district judge to decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction." (ellipsis omitted)).

## IV. CONCLUSION

For the reasons provided, Defendants' motion for summary judgment (Dkt. 54) is granted in part and denied in part. The federal claims are dismissed with prejudice, and the state-law claims are remanded to the Wayne County Circuit Court.[4]

SO ORDERED.

Dated: July 12, 2018          s/Mark A. Goldsmith
    Detroit, Michigan          MARK A. GOLDSMITH
                                      United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 12, 2018.

                                  s/Karri Sandusky
                                     Case Manager

---

[4] Because this opinion disposes of all claims in this case, the pending motions related to scheduling and evidentiary issues (Dkts. 55, 60, 61, 62) are denied as moot.